DONALD W. SEARLES (Cal. Bar No. 135705)
Email: searlesd@sec.gov
ALEC JOHNSON (Cal. Bar No. 270960)
Email: johnsonstu@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
John W. Berry, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

FILED
CLERK, U.S. DISTRICT COURT
5/10/2018
CENTRAL DISTRICT OF CALIFORNIA
BY: DD  DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>KEENAN GRACEY,<br><br>Defendant. | Case No. 2:18-cv-03872-AB(ASx)<br><br>**COMPLAINT**<br><br>**(FILED UNDER SEAL)** |

LODGED
CLERK, U.S. DISTRICT COURT
5/9/2018
CENTRAL DISTRICT OF CALIFORNIA
BY: DD  DEPUTY

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a). Defendant Keenan Gracey ("Gracey" or "Defendant") has, directly or indirectly, made use of the means or instrumentalities of

interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

2. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.

## SUMMARY

3. The SEC brings this emergency action to halt an ongoing investment fraud by defendant Keenan Gracey. Gracey takes investors' money promising to invest in "pre-IPO" shares with a 6,000% return. In reality, these shares do not even exist—there is no planned IPO. Instead, Gracey just steals the money. So far, he has taken at least $400,000 from known investors, has received over $2 million through approximately 107 wire transfers into his various bank accounts since 2016, and continues to solicit new investors.

4. On October 11, 2017, DXC Technology Company ("DXC"), announced a planned merger of its public sector business division with two private companies, KeyPoint Government Solutions ("KeyPoint") and Vencore, Inc. ("Vencore"), which are both owned by private equity funds managed by Veritas Capital Fund Management, LLC ("Veritas"). The merger was initially expected to close in March 2018, and is presently expected to close in May 2018.

5. Claiming that he comes from a wealthy family background, Gracey falsely offers unsuspecting investors "pre-IPO shares" of the planned new company, even having them sign a "share purchase agreement." However, neither the IPO nor the shares are real. DXC is not planning a public offering, and until the merger is finalized, no shares in the new company will be distributed. Moreover, Gracey neither owns, nor has access to, any shares, nor has he any relationship with DXC, Veritas or its investment funds, nor with Vencore or KeyPoint.

COMPLAINT                                         2

6. By engaging in this conduct, Gracey has violated, and continues to violate, the antifraud provisions of Sections 17(a)(1), (2) & (3) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a), (b) and (c) thereunder, 17 C.F.R. 240.10b-5(a),(b) & (c).

**DEFENDANT**

7. Keenan Gracey, age 27, is a resident of Clyde Hill, Washington. Gracey is not registered with the Commission in any capacity.

**RELATED ENTITIES**

8. DXC is a technology services company formed in 2017 from the merger of Computer Sciences Corporation and the Enterprise Services division of Hewlett Packard. DXC is incorporated in Nevada, with its principal place of business in Tysons, Virginia. DXC has been an SEC reporting company since 2017, and is quoted on the NYSE under the ticker symbol "DXC."

9. Veritas is a registered investment adviser and manages four private equity funds. Veritas is a Delaware corporation founded in 2005, with its principal place of business in New York, New York. It has been registered as an investment adviser with the SEC since 2012.

10. KeyPoint is a private management consulting company formed in 2011. KeyPoint has its principal place of business in Loveland, Colorado. KeyPoint is owned and controlled by funds under the management of Veritas.

11. Vencore is a private government contractor, incorporated in Delaware in 2010, with its principal place of business in Chantilly, Virginia. Vencore is owned and controlled by funds under the management of Veritas.

**FACTUAL ALLEGATIONS**

**A.    Background: Gracey's Elaborate Façade of Wealth and Success**

12. As part of an elaborate scheme to cause investors to part with their money, Gracey represents to investors, orally and in solicitation emails, that he comes from an extremely wealthy family, one with "an enormous array of military and

governments contracts at our disposal to bolster the companies we buy."

13. According to numerous investors, Gracey promotes himself by showcasing an extravagant lifestyle, claiming to own luxury homes in Beverly Hills and Seattle and a fleet of luxury automobiles, including Bentleys and Ferraris.

14. As part of his appearance of wealth, Gracey provided one or more investors with a heavily redacted bank statement, purporting to show that Gracey had immediate access to over $700 million.

15. Gracey uses the illusion of wealth and privilege to convince investors that he has special access to exclusive financial transactions, claiming "multi generational success [that his family has] garnered through successful IPO's and bringing private companies public."

16. In fact, Gracey's lavish lifestyle is an elaborate façade designed to falsely portray himself as an international man of finance with family ties to various governments and government contractors, to convince investors that he has unique access to lucrative financial deals.

17. Gracey does not own either of the real properties that he claims to own.

18. Gracey rents the luxury automobiles that he claims to own.

19. Gracey has no connection with any of the companies in the merger that he claims to be involved with.

20. Given the fact that Gracey is behind in rent on the properties he claims to own, and that his luxury automobiles have been repossessed, on information and belief, Gracey does not have immediate access to $700 million.

21. Gracey's false portrayal of the impression that his background and lifestyle provided him access to financial opportunities were material to investors' decisions to entrust their money to him.

**B.    The Pre-IPO Investment Scheme**

22. On October 11, 2017, DXC publicly announced that it would spin off its public sector business division and merge it with Vencore and KeyPoint to form a

new publicly traded company.

23. As noted in public announcements about the merger, private equity funds managed by Veritas, which own and control both Vencore and KeyPoint, will receive approximately 14% of the shares in the new company. The remaining shares in the new company, which will be called Perspecta, Inc. ("Perspecta"), will be distributed to DXC's shareholders.

24. No public offering of Perspecta shares has been announced, and contrary to Gracey's representations to investors, no public offering is planned.

25. The merger, originally expected to be finalized by March 31, 2018, is now expected to close in May 2018.

26. Beginning no later than October 15, 2017, and continuing through the present, Gracey has used public information about the deal to lure investors into believing he owns or has access to pre-IPO shares in Perspecta.

27. Gracey communicates with investors through in-person meetings, by phone, by email, and by texts.

28. For example, Gracey showed several investors a DXC-created presentation (which is publicly available on DXC's website) that highlighted the benefits of the merger and detailed the parties involved.

29. Gracey claimed to several investors orally and in emails that his grandfather had a controlling interest in several investment firms, including Veritas.

30. Based on his family's alleged connection with Veritas, Gracey represented to investors orally and in emails that he made a personal investment of $150 million in the pre-IPO stock, and further claimed to have purchased another $100 million of stock on margin to sell to other investors "so as to earn [Gracey's] $24 per share on the secondaries [sic] insurance market."

31. Gracey offered to sell portions of this additional $100 million stake in pre-IPO stock to investors.

32. Several investors received a "Share Purchase Agreement" in which

COMPLAINT 5

Gracey represents that he "is the owner of record of an aggregate of Series A shares in a private company with NDA Chartered name NewCorp, which is the product of the merger of parts of DXC, Vencore, Keypoint, and any other businesses involved (the "Corporation") that intends to go public with an IPO, in 2018, through an accredited investment consortium."

33.   In the "Share Purchase Agreement," Gracey further represents that he is "the owner in clear title of the Shares and the Shares are free of any lien, encumbrance, security interests, charges, mortgages, pledges, or adverse claim or other restriction that would prevent the transfer of clear title to the Purchaser."

34.   Gracey agreed to sell these purported pre-IPO shares to investors for $1 a share, in the Share Purchase Agreement.

35.   Gracey told investors orally and in emails that they would recover fifty to sixty times their investment after the newly formed company went public.

36.   Gracey also offered a range of incentives for investors to bring in other investors, including offering to pay 10% of the profits he made on the "secondaries [sic] market" from these referrals.

37.   When he is taking investors' money, Gracey knows, or is reckless or negligent in not knowing, that he does not have any access to or ownership in the shares he promises to provide the investors in exchange, and that he does not have the wealth and connections he claims to have in luring these investors.

38.   Reasonable investors would have found it important to know that the securities at issue did not exist and that Gracey would keep the money they gave him without every delivering the promised "pre-IPO" shares.  Reasonable investors would also have wanted to know that Gracey's façade of wealth and connections was a ruse.

C.   **Gracey's Representations Are False**

39.   Gracey knows, or is reckless or negligent in not knowing, that his representations about the proposed IPO and his alleged financial interest in the new company to be formed are false.

40. DXC has no intention, publicly stated or otherwise, to make a public offering of shares in connection with the merger and formation of Perspecta.

41. Rather, shares in Perspecta will be distributed to DXC shareholders and the Veritas funds with no separate offering.

42. Gracey knows, or is reckless or negligent in not knowing, that no Series A shares of Perspecta are authorized by Perspecta's articles of incorporation or bylaws, no Series A shares have been issued, and no shares in Perspecta can be acquired or distributed before the merger is finalized, which has not yet occurred.

43. Accordingly, Gracey knows, or is reckless or negligent in not knowing, that his claims that he already owns shares in the new company are false.

44. In addition, and Gracey knows, or is reckless or negligent in not knowing, that he holds no financial interest in KeyPoint, Vencore, or in the Veritas funds, which own and control those companies.

45. The majority of Veritas's clients are institutional investors, such as pension funds, and there are only three individual clients, none of whom have a connection to Gracey or his family.

46. Gracey's misrepresentations to investors were material to their decision to sign share purchase agreements and to give money to Gracey to purchase the pre-IPO shares that Gracey offered and purported to own. Reasonable investors would have found it important to know that the securities at issue did not exist and that the money paid for those securities would be misappropriated.

### D. Recent Events and Gracey's Lulling Activities

47. Numerous investors grew suspicious of Gracey after he indicated the purported IPO was "delayed," and some investors learned that Gracey did not own the real estate or expensive cars that he led them to believe he owned.

48. Several investors have demanded the return of their monies, but Gracey has given them an array of excuses, including falsely claiming that that the SEC has frozen his accounts pending completion of the merger.

49. A group of Washington-based investors flew to Los Angeles in March 2018 and confronted Gracey at his (rented) Beverly Hills estate. At that time, Gracey agreed to refund $50,000 within a week, and to provide further details about the pre-IPO investment.

50. Gracey neither refunded investors' monies nor provided further details about the investment.

51. Instead, Gracey vacated his rented Beverly Hill estate and went to the state of Washington, still owing over $50,000 in unpaid rent.

52. Nonetheless, Gracey continues to lull investors into believing their pre-IOP investment is safe and on track.

53. As recently as April 30, Gracey distributed additional publicly available information concerning the formation of Perspecta to investors, breathlessly stating in at least one text message, "Trust me tho..(sic) that document right there is exactly what the [expletive] we all been waiting for. "

54. Gracey continues to solicit new investors in his pre-IPO scheme, and unless temporarily and permanently enjoined, will continue to do so.

55. In carrying out his offering fraud, Gracey has used, and continues to use, various means and instruments of interstate commerce, including, but not limited to, interstate telephonic communications, email communications over the Internet, and interstate wire transfers of investor monies.

## FIRST CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a)(1) and (3) of the Securities Act**

56. The SEC realleges and incorporates by reference paragraphs 1 through 59 above.

57. As set forth above, Gracey's elaborate façade of wealth and success, his use of publicly available information concerning the merger and creation of Perspecta, and his claim that he has unique access to pre-IPO shares, is just an

1. elaborate scheme to convert investors' monies.

58. By engaging in the conduct described above, Gracey, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly, knowingly or recklessly employed devices, schemes, or artifices to defraud, and knowingly, recklessly or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

59. By engaging in the conduct described above, Gracey violated, and unless restrained and enjoined will continue to violate, Section 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(1) & (3).

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Sections 17(a)(2) of the Securities Act

60. The SEC realleges and incorporates by reference paragraphs 1 through 59 above.

61. As set forth above, Gracey's representations to investors, including, but not limited to, those made in the Share Purchase Agreement, in which he claimed to own pre-IPO shares, are demonstrably false.

62. Gracey obtained money from investors by means of his material misstatements.

63. By engaging in the conduct described above, Gracey, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly, knowingly, recklessly or negligently, obtained money or property by means of untrue statements of material fact, any by omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were, not misleading.

64. By engaging in the conduct described above, Gracey violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

### THIRD CLAIM FOR RELIEF

**Fraud in the Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c)**

65. The SEC realleges and incorporates by reference paragraphs 1 through 59 above.

66. As set forth above, Gracey's elaborate façade of wealth and success, his use of publicly available information concerning the merger and creation of Perspecta, and his claim that he has unique access to pre-IPO shares, is just an elaborate scheme to convert investors' monies.

67. By engaging in the conduct described above, Gracey, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly or recklessly employed devices, schemes, or artifices to defraud, and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

68. By engaging in the conduct described above, Gracey violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. §§ 240.10b-5(a) & (c).

### FOURTH CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)**

69. The SEC realleges and incorporates by reference paragraphs 1 through 59 above.

70. As set forth above, Gracey made material representations to investors,

including, but not limited to those made in the Share Purchase Agreement, in which he claimed to own pre-IPO shares.

71. By engaging in the conduct described above, Gracey, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly or recklessly, made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

72. By engaging in the conduct described above, Gracey violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(b) thereunder, 17 C.F.R. §§ 240.10b-5(b).

**PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

I.

Issue findings of fact and conclusions of law that Defendant committed the alleged violations.

II.

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and an order to show cause why a preliminary injunction should not be entered, temporarily and preliminarily enjoining Defendant, and his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §77q(a)(1), (2) & (3)], and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5(a), (b) and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b) & (c)].

**III.**

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and an order to show cause why a preliminary injunction should not be entered, freezing the funds and assets of Defendant; prohibiting Defendant from destroying documents; ordering an accounting by Defendant; and ordering expedited discovery.

**IV.**

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant, and his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §77q(a)(1), (2) & (3)], and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5(a), (b) and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b) & (c)].

**V.**

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant from, directly or indirectly, participating in the issuance, purchase, offer, or sale of any securities, provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities listed on a national securities exchange for his own personal account.

**VI.**

Order Defendant to disgorge all funds received from his illegal conduct, together with prejudgment interest thereon.

**VII.**

Order Defendant to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VIII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## IX.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: May 9, 2018

/s/ *Alec Johnson*
Alec Johnson
Donald W. Searles
Attorneys for Plaintiff
Securities and Exchange Commission